Good morning, Your Honor. Proceed. Good morning. May it please the Court, Cara Pierce on behalf of Jaime Enrique Montepeque-Peralta. Your Honor, this is a simple 1326 case where my client had admitted most of the elements of the treacherous act. That's an interesting last name, Pears. That means Peter, doesn't it? Pearson, Your Honor. Yeah, Pearson. He probably does. It has to be. Okay, go ahead. Yeah, Pears means Peter. You got the old-fashioned spelling. Thank you, Your Honor. Okay. Your Honor, this is a simple 1326 case where my client had admitted most of the elements of the charge before the complaint was even filed. And then eight days before the trial, he notified the Court and the government that he would be pleading guilty. The government failed to demonstrate below that it had meaningfully prepared for trial, and my client was entitled to that third acceptance point. Were you the lawyer that did that? I am, Your Honor. At the proceedings in the trial court? Yes, Your Honor. Your Honor, the government bears the burden of demonstrating meaningful preparation, and the test is that the government has to show that it has already spent considerable time and effort such that it is substantially prepared to go to trial on the matter. And it's a context-specific test. Here, there are a number of factors that show that the government had not meaningfully prepared. First of all, this was the charges and the complexity of the trial. The trial in 1326 cases is simple. It's brief. The Court stated below that these trials take less time than what this case would have taken for sentencing. She then acknowledged that there's always a complication in these trials. That's true, Your Honor. There's always an issue that we have to deal with. That's true, Your Honor. However, those complexities don't arise at the trial level. Those complexities, as I know this Court is familiar, generally arise in the context of challenging the legality of the deportation, which is something that occurs during the pretrial motions period. During at that point, those cases can become complex. But factually, when these cases are presented at trial, they're very simple, they're very brief. Maybe you can just help me. As I understand the record here, and I looked at all the documents that have been filed, you initially start out by filing a motion to challenge the indictment, and that was disposed of. That's correct, Your Honor. And then the government came back with a series of motions in limine in one document, which you later categorized as routine, non-substantive, standard motions in limine suggesting that these are the kinds of motions that are filed all the time in 1326 cases in the Southern District of California. Correct, Your Honor. And they focused on preclude the defendant from disputing his alienage, prohibit a collateral attack on his deportation. Why wasn't this part of their pretrial preparation? It was, Your Honor. That was motions practice. The government's filing of motions in limine was that. Does that count towards their meaningful trial preparation? No, it does not. It does not. Why not? Because it's motions practice. Because it is – well, because it's motions practice. The government was not forced to cite any pretrial motions that I had filed. I was not litigating the case and forcing the government to prepare for trial. And so the government's filing of those motions – Did the government call you up ahead of time and say, look, will you agree to, you know, that the A file can be admitted into evidence? No, Your Honor, it did not. And there was also no A file viewing in this case. The government – They asked you in this motion to admit A file documents. Correct, Your Honor. And, no, the government never called me to stipulate to the admission of any evidence. There was no conversation about any evidence that might, you know, be admitted at trial. We never had a conversation like that. Now, I gather by the time you showed up for this motion that you had been talking settlement. Your Honor, we had talked – Why did you negotiate a plea? We had talked settlement earlier in the case. And as I stated in my papers, the government was unwilling to offer anything that would have resulted in a sentence lower than what Mr. Montipec had received in his very first 1326 conviction, which was 78 months. And at that point, I was – Mr. Montipec and I were sort of caught between a rock and a hard place, trying to figure out what could we possibly do to – what could we do to get some leverage? What could we do to try to reduce Mr. Montipec's exposure? What was it, Your Honor, that you made to the district court judge, I guess at the time of sentencing, when you referred to your experience at that time, at the time all this was going on? And you said, well, I was a new public defender who was trying to understand these cases. What was that all about? Well, Your Honor, there is a – what I was trying to do was to understand what I could possibly – what I could do to get Mr. Montipec a better offer, and whether there was something that I could do, whether it was talking to another supervisor or whether there was – what benefit there might be to my client to actually taking the case to trial. And there are a number of beliefs in the office, and there are a number of different lawyers with a number of different opinions about what to do in a case like this, where the defendant seems to really be deserving of – you know, with a criminal record that is not egregious, who is not a danger to the – you know, to the American society, which is usually what the government looks at when it's deciding whether to give a person an offer or not. And so I was in a position where I wanted to see what I could do to negotiate and see what I could do to give Mr. Montipec more leverage. And that was what I was – that was what I was referring to. But I gather from that statement that you were – you might have been suggesting to the district court judges, had you been more experienced, he might have entered a plea much earlier. I think, Your Honor, that what I was – Are you suggesting that to the district court? I think that what I was suggesting was that I was – I was – that it took me longer to figure out how to counsel Mr. Montipec than it might have taken someone with more experience in 1326 trial or straight up guilty plea cases. And I believe that that was what I was trying to indicate when I made that statement. The government says that they – that they issued subpoenas. Correct, Your Honor. I don't know, Your Honor. I don't know what the word issued means. There's certainly no evidence that those subpoenas were served. And my investigator talked to those – to the agents in the case, and the agent said that they had not been contacted about preparing for trial. So I dispute that they, you know, that they had been prepared for trial in any way. The last thing the government pointed to was that they had contacted a fingerprint expert. Yes, Your Honor. And that – that John Torres – Before the hearing on these motions. Correct, Your Honor. And, Your Honor, the government uses the same fingerprint expert in every single 1326 case. I don't know. So – so contacting John Torres – What does that mean? Because they didn't – it doesn't mean it's not preparation. It's preparation they do in every 1326 case. It may be preparation, Your Honor, but it's not considerable time and effort spent to prepare for trial. Well, what do you mean? But the trial judge found, you know, all these things taken together based upon the representation of the government, that it was a finding, he said, that, you know, that the government performed sufficient work in preparation for trial. Now, that's reviewed for clear error, right? That's a finding the trial court made. Now, I don't see the clear error myself. Well, Your Honor, the clear error is – I could see where, you know, he might have come down the other way, but I don't think he had to. Your Honor, there are a couple of points. The government didn't – didn't sustain its burden to show that it had meaningfully prepared for trial. There may have been – Why not? Did all this pretrial work? You know, he said he issued subpoenas. Apparently, the court believed that because, you know, over the – your representation about your investigator statement because he – the court said in light of the government's statements and the preparation, you know, to go forward with trial. So – and I think our case is safe. He issued subpoenas. You know, he did the pretrial motion. He got this expert – why isn't that, you know, substantial preparation? For a couple of reasons, Your Honor. First of all, there was a factual dispute over what had – what was actually done in terms of contacting these witnesses. It doesn't matter. The court found against you. Correct, Your Honor, but I did ask for an evidentiary hearing, and I was denied. The other issue is that in cases where issuance of subpoenas might constitute meaningful trial preparation, those cases are far more complex, involve witnesses that are not – What are you saying? Preparing for a simple case is not preparation? No, Your Honor. I'm saying that it is a less time-consuming process in a simple case like this. Of course it is. In the trial, the simple case is less time-consuming, but it doesn't mean, you know, whatever preparation is done for that case is not substantial in terms of that case. Well, Your Honor, I – it may not, but it also may mean that it's not substantial. And in this case, I contend that it's not substantial. I agree. It may mean, it may not mean. It's up to the trial judge to make that finding. Your Honor, I – the trial judge found that there was what she called sufficient preparation, and the – which on the one hand is not actually the standard. The standard is whether there was meaningful or substantial preparation. And then the other issue is that the trial judge did refer to the number of days before trial. At that time, the prosecutor has to start – has to start preparing. And so the conclusion was at least seen to be in part based on an assumption that at a certain number of days before trial, certain events will have taken place. But here, that isn't what happens. Enough preparation didn't occur for the government to be substantially prepared to take the case to trial. The witnesses were not contacted or interviewed. There was no preparation of a trial memorandum or preparation of jury instructions. The discovery that the government is referring to that it produced – Well, you know, as you just said, in 1326 cases, the preparation of jury instructions is pretty routine, isn't it? Well, that may be, Your Honor. But nevertheless, it wasn't – it wasn't – that preparation was not done here. Did the district court judge ever rule on the motions in limine that the government  No, it did not. Then why was that? Well, because I contacted the court in advance and advised that there – that my client would be pleading guilty. There was no motions in limine hearing. I never filed any motions in limine, nor did I file a suppression motion. One of the strange things that the government refers to is that it had arranged to bring witnesses to the motion in limine hearing, which is a statement that I simply can't understand, because witnesses are required in a motion in limine hearing where the defendant files a motion to suppress or where there's a challenge or a dispute about the admission of evidence at trial. There was no such dispute. The government refers to redacting of exhibits. Now, maybe – maybe – or, excuse me, redacting of documents. Perhaps documents were redacted at the Rule 16 stage when I was provided with discovery, but there was no motions in limine ruling about the need to redact any exhibits. So not only were those documents not – not provided to the court just so that we could see what sort of redacting the government was talking about, but it was – it was I guess on May 12th you called into the court and said we're – That's correct, Your Honor. Yes. You didn't show up at the hearing and say it was orally in front of the court? Well, we – I called in advance and then went into court and explained on the record that Mr. Montipec would be pleading guilty. We would have pleaded guilty at that time. Judge Gonzales prefers to – To the magistrate. To send it to the magistrate. Exactly. So, Your Honors, the – this issue is in many ways sort of an extinct issue under – after Feeney, and so we recognize that we're not at the cutting edge of perhaps guidelines interpretation, but this small difference is a large difference to Mr. Montipec. And so I know that he appreciates the court's consideration of this issue, and I'll reserve the remainder of my time to Feeney. Okay. Hi, Mr. Alexander. May it please the Court. My name is Christopher Alexander. I'm an assistant United States attorney. I represent the plaintiff appellee of the United States of America. I was the attorney also in the trial court in this particular matter, and there are two distinct issues that the Court must determine today, one of which wasn't addressed by counsel during her opening statement. In inverse order to the way that I prepared it, actually, I'd like to go ahead and address the district court's denial of acceptance of responsibility. Now, the defense pointed to and made a statement that the defendant had admitted – You mean the third point. The third point of acceptance of responsibility. That's correct. And that the defendant had admitted the elements of the offense. In fact, the defendant invoked his Miranda rights and admitted only alienage, did not admit all the elements of the offense. Therefore, from that point forward, he had began contesting everything. Now, the district court, in jest, basically said that the sentencing hearing was taking longer than the trial would, mainly because of all the issues that were raised, various departures that had been raised. And then when counsel seized upon that statement, the district court then specifically stated, as Justice Pius pointed out, I have never had a 1326 trial that is not complicated, close quote. So the court was recognizing that this was, in fact, a complex case. Each 1326 case has its own unique issues. In this particular case, the defendant had used three prior aliases. In particular, noted in the record, the defendant had a prior conviction under which he had used the name Eric Salazar. That's in the excerpt of record at 19 through 25. In addition to that, he had also used the alias Moises Mui Canastu in the excerpt of record at 26 through 29. And finally, he used the name Mr. Montepique Peralta. So all of these things would be necessary in proving whether or not the defendant was, in fact, an alien. Whether he had been previously deported and whether he was illegally re-entered the United States. And that goes to Judge Chachima's point that it was necessary to have the defendant's identity established. And that's why the fingerprint expert was contracted in this case. He was contracted early on after the decisions were made concerning the motions that were filed. That took place in March of 2004. You're talking about the defendant's motions, right, that attacked the indictment. That's right. Now, all of those motions. Before I forget, Mr. Alexander, let me ask you, what did you mean? What was this business about, you know, getting witnesses ready for an in limine hearing? Well, that's an important point, Your Honor, because prior to trial, quite often we have a voluntariness hearing in order to determine whether or not a defendant's statements can be admitted at trial. Now, in this case, there had been no motion filed attacking the voluntariness of the statements. However, under 3501, that is something that does need to be determined, and quite often the district court judges in our district will make that determination pretrial. And in this instance, the defendant did make a field admission, and there would be a necessity to make a determination as to whether or not those statements were, in fact, voluntary. So, in essence, to make sure that that did take place, we were getting witnesses available for that hearing. Now, this all comes back to. I gather up until the time that you actually filed this motion in April, on April 28th, that there had been some negotiations with the defense about a disposition. Those negotiations took place prior to March 24th. The idea is to try and resolve cases prior to the government having to file a response in the case. That did not occur. The defendant was made an offer. Filing a response in the case. For the government filing what response? A response to the motions that were decided on March 24th of 2003. Those were. . . That has nothing to do with trial preparation. You're correct, Your Honor. That has nothing to do with trial preparation. The government would like to have the defendant admit guilt right at the plea, right before the magistrate, just under the arraignment, right? No, it wouldn't have to do any work. Well, ideally. . . No, but. . . If the defendant is in fact guilty, that would be the situation. Well, that's the reason that you have in your district a fast track extra point, right? Well, there are fast track programs that are available by which an individual can enter a guilty plea. But in this instance, he chose to proceed. There was an offer made. That offer was rejected. And from March 24th, 2003 until May 16th, 2003, the defense did nothing. Enforced no right concerning their constitutional rights. Well, did they file any motions? No, Your Honor. They did not file any motions. So you're upset because they didn't file any motions? No, absolutely not. They didn't make you work? Well, just because the defense doesn't file any motions doesn't mean the United States stops preparing for trial. Oh, that's right. At that point, the United States. . . The question is whether or not when he pled, had you engaged in meaningful. . . That's correct, Your Honor. And from March 20th. . . You said you engaged in sufficient trial preparation. And she looked at the fact that it was eight days before trial. And my goodness. Well, eight days. . . It's currently eight days before trial. The government's got to spend time preparing for trial. Exactly. And. . . Did you?  What did you do? What did we do? We, as indicated before, we filed motions of limine. The motions of limine, while argued to be boilerplate, are not necessarily boilerplate. You look at the beginning of the statement of facts. You can't take that statement of facts from one defendant and apply the statement of facts to another defendant. Looking at the notice for 404B, 404B is defendant-specific. Did you ever call up the other side and say, is there any of these things we can agree on? No, Your Honor. Quite often in the district in which we practice, there are no stipulations concerning admissions of any of these documents, whether it be from the A file or documents from prior convictions. And it's the rare instance where a defendant will admit to the prior conviction, which would substantiate the elements of the offense. Let me ask you this. Is it your contention that just filing the motion in limine is sufficient pretrial preparation? Well. . . Meaningful. Is it meaningful pretrial preparation? I think you have to look at the totality of what occurred there. In the totality, you had not only did the defendant provide notice eight days before trial, however, he did not plead until the 16th. That was before the magistrate judge, though. If he had said, Judge, I want to plead right now, right now in front of you, is it Judge Gonzales' practice to accept the plea? Well, at that time, I don't know that. . . On the 12th. I'm talking on the 12th when they showed up, when the day that she notified the judge that she was going to plead guilty. The defendant said to Judge Gonzales, I want to plead guilty right now. Take my plea, Judge. Well, that would require. . . That's not what Judge Gonzales' practice is because she wanted to go to the magistrate judge two days later, four days later on a Friday afternoon when they got in to see the magistrate judge to enter their plea. The magistrate judge is available every single day. This took place on a Monday, Monday the 12th. The defendant didn't enter a plea until Friday the 16th. In that intervening time period, it could have easily been put on calendar before a magistrate judge for. . . I don't know the practices down in. . . Well, that's. . . I don't know the practice of the district court judge. In the central district, the district court judges take the plea. So if any defendant had come to my court on the 12th like that and said, Judge, I'm going to plead guilty, all right, let's do it right now. Right, and that's not what occurred here. And here, not only did the defendant provide notice on the 12th. Well, that was the first time. Let me ask you this. Did counsel inform the judge that she was, that the defendant was thinking about pleading guilty? Or did the defendant, or did counsel say, he's going to plead guilty. We need to get over to the magistrate judge. You know, I'd have to look at the record in order to make that determination. Oh, you were there. I was there, and I don't know if that distinction was made. At the time of the advisal, she said set it before the magistrate judge. However, what the district court did do is say, I'm not going to set aside the trial date. It specifically kept the trial date in the event that the defendant did not enter a guilty plea. Well, there's always, you know, the looming trial date is always an incentive. Well, it's always an incentive, but it doesn't mean, and you knowing that if indeed the defendant didn't plead guilty, the trial court would have expected the government to be able to proceed for the trial. And that's exactly what we did. We continued to prepare for trial, even after the notice was provided on the 12th that he was going to be pleading guilty, because he had not pled guilty. So after the 12th, then, what did you do next? Well, after the 12th, as pointed out in the papers by Mr. Montesquieu's counsel, fingerprints were taken on May 13th. That report was generated concerning the fingerprints and the comparison, and that was generated on the 14th. And as a part of that, prior to all of that taking place, the government had produced what was basically going to be the trial exhibits. Now, in pointing out that the United States produced redacted exhibits, the idea is to try and avoid any potential conflict, whether or not documents should be admitted or should not be admitted. How many exhibits were there? Well, as far as the exhibits, typically it contains a notice to appear, a warning to the alien, order to be removed or deported, the warrant of deportation, and other documents concerning the immigration process itself. All of those documents typically will have in there references to penalty that typically are not admitted before the jury and are not relevant, as well as information concerning where the individual is being housed. Again, pointing to a correctional institution, which could lead to a negative finding by the jury. So you had gone through the A file and had identified those documents that were necessary to support your... That's correct, Your Honor. ...support the prosecution. And those documents had, in fact, been redacted and turned over. It was an anticipation of trial. How much of this was Judge Gonzales aware of? Well, Judge Gonzales was aware of the fact that we had filed motions of limine directly. She had seen the motions of limine that had, in fact, been filed. Judge Gonzales was also likely aware that prior to eight days before trial in a complex issue where the defendant has used multiple aliases, the United States would need to establish this individual's identity. So Judge Gonzales was aware of all of these things just as a fact. And then in addition to that, the fact that subpoenas had been issued for the witnesses, that it's regular practice that these witnesses will come in and provide testimony in order to establish a voluntary statement. When you say subpoenas had been issued, you gave them to your case agent, or what do you mean by that? Well, Your Honor, they were generated, and they are actually in my file. But they were not placed before the district court and the court below. You had not served them either, had you? They weren't served. No, some of them... All you had done is just generate. Actually, the correct description would have been you had generated or you had prepared them. No. Some of them had, in fact, been served. And I don't know where defense is getting the statement that none of the witnesses have been contacted. All of the witnesses have been contacted as a part of preparing the statement of facts. Now... But that was in connection with the motion in limine, correct? That was in connection with the motion in limine, yes, Your Honor. Or was that in connection with the opposition, the government's opposition to the motion to dismiss? It was in connection with the initial motion, response in opposition to the motion to dismiss, in which all the agents are contacted. But then again... I don't think that was in connection with the response to the opposition to the motion to dismiss. Yes, but they had, in fact, been contacted and notified that they would be called as witnesses for trial. In addition to that, they were also contacted to notify them that they would be called as witnesses at the motion in limine hearing as well. All right. Now, I see my time has expired. I did want to briefly address whether or not the district court properly enhanced Mr. Montepique's sentence by 16 levels based upon his prior crimes. That argument seems to be foreclosed by one of our recent cases, if I remember correctly. Well, Your Honor, Mr. Montepique actually concedes in the reply brief that the government apparently misses the fact that Mr. Montepique was a drug trafficking conviction. Now, putting aside that concession, this statute itself, 11351, meets both levels of the categorical approach. It meets the first level of the categorical approach, and then that meets the generic definition of what is, in fact, drug trafficking. And under the second level, it meets the modified categorical approach because the district court did, in fact, have an opportunity to review the documents, the charging document as well as the conviction record concerning Mr. Montepique. And as a part of that, the district court was proper in enhancing his sentence 16 levels. Now, the main thrust of Mr. Montepique's attack is whether or not there's a 13-level or there was a 13-level sentence. And as the court points out in the United States v. Barranos-Cisneros, that argument is foreclosed. Now, in the alternative, the district court found that there was a 16-level increase based upon his prior conviction for violating California Penal Code 246.3, the willful discharge of a firearm. Now, my circuit has yet to deal with this issue specifically. Well, you don't have to get to that issue as long as there's a finding on 11351. But in the alternative, this is the use, attempted use or threatened use of physical force. And this is supported by the courts addressing the United States v. Winard, in which they found under a similar statute that it would be appropriate to find a crime of violence. In the end, Your Honors, the two issues here, whether or not a 16-level enhancement was appropriate, the district court found in two alternatives that it was, in fact, and there was no error there. And the district court clearly did not err when it came to that third level for acceptance of responsibility, because the United States did meaningfully prepare for trial. And the defendant did not, in fact, plead until four days before trial. Thank you for your time. You have your witnesses all lined up, they're ready to come? Yes, Your Honor. They've all been served by subpoena? Yes, Your Honor. And you've got the subpoenas in the file? Yes, Your Honor. Show that service is made? Your Honor, service is typically made through handing them out to the various agents, and the original subpoenas themselves are in the case file. But they're not a part of the record because the district court didn't require it. It shows, I believe, in-person service. What? Personal service? Yeah. I believe the box is checked for personal service. It was carried out by the agents? Yes. All right. Thank you. Thank you. Your Honor, on the issue of the service of the agents, my investigator contacted all of the agents in the case, and they said they had not been contacted about preparing for trial. And so I disputed that issue below, and I made my record on that. Mr. Alexander has tried a number of 1326 cases, and that may be typical practice, but there was no record below on the service of the subpoenas. You didn't submit just the original subpoenas, even the original subpoenas? Nothing was submitted, Your Honor. All of these determinations were based on the statements of the prosecutor. As far as the complexity of this case goes, this case was not complex, and the government is arguing that it is complex now. It's a new argument because my client had used other aliases. As I stated in my papers and as I stated in the court below, Mr. Montepac always conceded those aliases. And, in fact, when I filed my briefs, I filed those briefs as Jaime Enrique Montepac Peralta, a.k.a. Eric Salazar Salazar. And so that was not an issue that rendered this case complex for the government. The government fingerprints people in every case, in every 1326 case, whether the person has used the same name in every deportation proceeding or whether that person has used other names before. That fact did not render this case complex. As far as the scheduling of this plea before the magistrate, that is Judge Gonzalez's preferred practice. And there is the – although magistrates are available every day, the duty magistrate is busy with new complaints. And we scheduled that plea as soon as we possibly could, consistent with my schedule and Mr. Alexander's schedule. There was no delay in the taking of the plea. But regardless, the requirement under 3E1.1 is that the defendant notify the authorities, which is what Mr. Montepac Peralta did here. And so anything that Mr. Alexander did afterward does not constitute trial preparation taken at – taken before the time that Mr. Montepac notified the government that he would be pleading guilty. And he did say in the district court that he would be pleading guilty. There was no equivocation. The – I believe that the difficulty with this case is that all of the information is in the hands of the government. And some of the arguments that the prosecutor makes here for – as argument that he was prepared for trial are an attempt to bootstrap as much as possible of the things that were done over the course of this case, and to color it as trial preparation when it is not. And so when the Court looks at what makes a person, what makes a lawyer, substantially prepared to go to trial and considers all of the tasks, and I believe that it is a task based test, then the Court will realize that this prosecutor had not meaningfully prepared and that Mr. Montepac was entitled to that third acceptance point. Thank you very much. Thank you. I will call the next matter, and that will be United States of America versus one.
judges: Pregerson, Tashima, Paez